MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
MICHAEL C. ABEL (CSBN 187743)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Administrative Claimant

REIDUN STRØMSHEIM (CSBN104938)
JOANNE LAFRENIERE (CSBN 158011)
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Facsimile: (415) 989-2235

Attorneys for Trustee,
JOHN T. KENDALL

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FRESH CHOICE, LLC,<br><br>Debtor. | Case No. 12-46157<br><br>Chapter 7<br><br>**AMENDED MOTION FOR ORDER (1) SUBORDINATING THE CLAIM HELD BY DAVID S. BOYD AND (2) TRANSFERRING THE LIEN SECURING SUCH CLAIM TO THE ESTATE** |

McNutt Law Group LLP ("MLG"), formerly counsel to the Official Committee of Unsecured Creditors while the above-referenced case was pending in Chapter 11 and currently an administrative claimant in this Chapter 7 case, and John T. Kendall, the duly appointed and acting Chapter 7 trustee (the "Trustee") in the above-referenced case, allege as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Complaint[1] pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a "core" proceeding within the purview of, without limitation, 28 U.S.C. §157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND AND PARTIES

4. This case commenced with the voluntary filing of a petition for relief under Chapter 11 by Fresh Choice, LLC ("Fresh Choice" or "Debtor"), on July 24, 2012.

5. The Official Committee of Unsecured Creditors (the "Committee") was appointed on August 10, 2012.

6. The Committee selected and retained McNutt Law Group LLP ("MLG") as its counsel shortly thereafter.

7. MLG represented the Committee's interests throughout the time that the Debtor operated as a debtor-in-possession in Chapter 11 and currently is an administrative creditor of the Debtor.

8. Defendant David S. Boyd ("Boyd") is, and at all times relevant to this Complaint, was, the president and operating manager of Fresh Choice LLC.

9. An order converting the case to one under Chapter 7 was entered on November 8, 2012.

10. The order converting the case appointed John T. Kendall as the Chapter 7 trustee (MLG and the Trustee are collectively referred to herein as "Plaintiffs")

---

[1] Pursuant to the Court's ruling at the hearing on MLG's MOTION FOR ORDER: (1) SUBORDINATING THE CLAIM HELD BY DAVID S. BOYD AND (2) TRANSFERRING THE LIEN SECURING SUCH CLAIM TO THE ESTATE (the "Motion") on November 29, 2012, the Motion is being treated as an adversary proceeding. MLG and the Trustee were instructed to amend the Motion and revise it to be a "complaint" serving as the basis of this limited matter.

00010569-1  Case: 12-04241  Doc# 1  Filed: 12/04/12  Entered: 12/04/12 11:58:04  Page 2 of 8

# FIRST CLAIM FOR RELIEF
## (EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c))

11. The Debtor intended to close marginal locations as part of its reorganization, as the income of the Debtor's operations was insufficient to pay the operating expenses and the Debtor had no imminent prospect of new capital.

12. The Debtor did not file a motion to reject any leases for more than six weeks after the case was filed.

13. The hearing on the Debtor's motion to reject leases was scheduled for October 3, 2012 – more than two months after the case was filed.

14. The delays in filing the motion to reject and schedule a hearing resulted in significant unnecessary expenses for post-petition rent that was owed but not paid.

15. US Foods was the Debtor's largest secured creditor.

16. US Foods consented to the use of its cash collateral to pay rent only on those profitable locations that would be retained as part of the Debtor's reorganized (down-sized) operations.

17. Boyd's delay and inaction directly resulted in the Debtor accruing more than $700,000 in post-petition administrative rent.

18. Boyd had been informed by the estate's financial advisor that failure to reject leases was costing the estate over $8,000 a day in administrative rent claims.

19. Plaintiffs are informed and believe, and based thereon allege, that Boyd delayed in closing and turning over locations to be rejected.

20. Plaintiffs are informed and believe, and based thereon allege, that certain locations were not turned over to the appropriate landlord on the date that the Court entered an order approving rejection of the lease.

21. Although Boyd agreed to close certain stores, he misled the creditors and subverted the successful administration of the case by refusing to timely turnover the stores to the landlords.

22. Boyd disregarded his fiduciary duty to minimize unnecessary expenses of the estate and pursued a course of self-dealing, allowing the estate's administrative claims to grow so that he

could reach a deal for his own benefit.

23. The Debtor's operations suffered because it continued to operate at a large loss, fundamentally as it had done pre-petition.

24. The Debtor was not generating sufficient revenue and continued to accrue administrative rent claims at a staggering pace.

25. Plaintiffs are informed and believe, and based thereon allege, that US Foods decided that it was no longer willing to consent to the use of its cash collateral because the Debtor appeared to be running out of cash and was not able to continue to operate.

26. As part of final effort to preserve the chance for a sale or reorganization, the Committee worked with Boyd and US Foods to coordinate and negotiate a deal for the purchase of US Foods' claim by Boyd.

27. These efforts on the part of the Committee were premised on discussions with Boyd that he intended to propose a purchase of the Debtor's assets, and this purchase would, at a minimum, provide some significant payment for the unpaid administrative rent.

28. Boyd acquired US Foods' claim for $500,000.

29. This deal transferring US Foods' claim to Boyd included a release of Boyd's personal guaranty of the debt owed by Fresh Choice to US Foods.

30. This debt owed to US Foods was scheduled as $600,000.

31. Plaintiffs are informed and believe, and based thereon allege, that the amount of the claim had increased by the time of the transfer due to interest, attorneys' fees, and other charges.

32. The Committee was keenly aware of the difficulties presented by Boyd – an insider of the Debtor – holding US Foods' claim and controlling cash collateral, while also seeking to acquire the assets of the Debtor.

33. At the hearing on US Foods' motion to convert the case, counsel for the Committee disclosed to the Court that it had facilitated Boyd's purchase of US Foods' claim as a first step in what would result in an asset purchase agreement.

34. Boyd told MLG that the purchase of the Fresh Choice assets would involve an independent third party.

35. Committee counsel stated on the record that it was the Committee's position that all administrative rent, including rent for locations to be closed and leases to be rejected, should be actually paid.

36. The rent that accrued at many locations after the time Boyd acquired US Foods' claim was not paid.

37. The Committee sought to minimize concerns that Boyd would continue to delay in making decisions about which locations to retain and which to close, thereby sticking the landlords with unpaid post-petition rent while Boyd determined exactly which locations he wanted to take as part of a new company.

38. After Boyd purchased US Foods' claim, he was no longer interested in pursuing the deal previously discussed with the Committee to purchase the Debtor's assets.

39. At Boyd's request, the Committee supported brief continuances to permit Boyd time to finalize a purchase offer in the belief that an acceptable offer was forthcoming.

40. The Court imposed a deadline by which Boyd was to propose DIP financing and a purchase offer.

41. The only written offer presented by Boyd for the purchase of Fresh Choice's assets was received only after the deadline had passed to file DIP financing documents and a purchase offer.

42. The only written offer presented by Boyd was $500,000 less than the amount discussed at the time the Committee worked with Boyd to acquire US Foods' claim.

43. Plaintiffs are informed and believe, and based thereon allege, that at the time the case was converted, more than $1.2 million in post-petition administrative rent had accrued.

44. When the case was being converted to Chapter 7, Boyd asked the Trustee to continue operations for a brief time to ensure that employees would be paid.

45. The Trustee insisted that he would only seek an order authorizing the operation if Boyd posted the sum of $150,000 to cover any shortfall in income to pay operating expenses.

46. Boyd agreed to send the Trustee $150,000 as a guaranty against any shortfalls during this period.

47. Boyd did not send the money he agreed to send to the Trustee.

48. At a conference between the Trustee and Gerry Blake on Monday morning, November 12, 2012, the Trustee was informed that operating the store on November 13, 2012, would result in a loss.

49. The Trustee instructed Mr. Blake to close the stores at the end of the day on November 12, 2012.

50. Plaintiffs are informed and believe, and based thereon allege, that Boyd countermanded the Trustee's direction.

51. Boyd operated stores through the end of business on Tuesday, November 13, 2012.

52. Boyd effectively operated Fresh Choice as a Chapter 11 Debtor for his personal benefit.

53. Landlords were not paid while stores continued to operate and generate cash. Plaintiffs are informed and believe, and based thereon allege, that Boyd attempted to negotiate deals on his personal behalf with landlords while the Debtor's leases were being rejected by the estate and/or were accumulating administrative rent which would not be paid.

54. For at least two days (November 27 and 8), Boyd operated the Debtor's location at Vallco Mall without the consent of the Trustee or authorization from the Court.

55. Plaintiffs are informed and believe, and based thereon allege, that Boyd signed a new lease for the Vallco Mall location under the name of Espresso Roma.

56. Boyd's operation of the Vallco Mall Fresh Choice location used estate property without consent or authorization.

57. Boyd's operation of the Vallco Mall Fresh Choice location used the Fresh Choice name and trademarks.

58. Boyd's operation of the Vallco Mall Fresh Choice location was conducted on a "cash only basis."

59. The property of the estate used at the Vallco Mall Fresh Choice location had not been abandoned by the Trustee.

60. The Trustee filed his M<small>OTION TO</small> A<small>BANDON</small> C<small>ERTAIN</small> R<small>EAL</small> P<small>ROPERTY</small> ("Motion to Abandon") on November 20, 2012.

61. The deadline to respond to the Motion to Abandon and request a hearing is December 4, 2012.

62. No order abandoning property of the estate has been entered.

63. Boyd's conduct directly resulted in harm to administrative creditors, specifically landlords and other administrative claimants.

64. The Debtor accrued more than $300,000 in professional fees for MLG and the Committee's (and Debtor's) financial advisor, Bailey, Elizondo & Brinkman ("BEB").

65. The conduct described herein is "inequitable" as defined by 11 U.S.C. § 510(c), and the cases interpreting the same.

66. As an insider of the Debtor, as defined in 11 U.S.C. § 101, Boyd is subject to heightened scrutiny with regards to his conduct.

67. The relief requested herein is not inconsistent with other provisions of the Bankruptcy Code.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7

AMENDED MOTION TO SUBORDINATE CLAIM HELD BY DAVID S. BOYD

Case: 12-04241    Doc# 1    Filed: 12/04/12    Entered: 12/04/12 11:58:04    Page 7 of 8

**RELIEF REQUESTED**

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

1. That Mr. Boyd's claim be subordinated to all administrative expenses;
2. That the lien held by Mr. Boyd be transferred to the Chapter 7 estate; and
3. Such other and further relief as this Court may deem necessary and proper.

DATED: November 30, 2012     MCNUTT LAW GROUP LLP

By:    /s/ *Michael C. Abel*
Michael C. Abel
Administrative Claimant

DATED: November 30, 2012     STROMSHEIM & ASSOCIATES

By:    /s/ *Reidun Stromsheim*
Reidun Stromsheim
Attorneys for John T. Kendall, Chapter 7 Trustee